# UNITED STATES DISTRICT COURT

for the

Middle District of Tennessee

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  25-mj-1204 |
| GERARDO CARDONA-GONZALEZ | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___September 27, 2024___ in the county of ___Davidson___ in the ___Middle___ District of ___Tennessee___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 | Possession of controlled substances with the intent to distribute and distribution |

This criminal complaint is based on these facts:

Please see the attached statement in support of criminal complaint.

☑ Continued on the attached sheet.

_/s/ Jordan Austin_
*Complainant's signature*

FBI SA Jordan Austin
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by <u>telephone</u> (specify reliable electronic means).

Date:  MAY 2, 2025

*Judge's signature*

City and state:  NASHVILLE, TN

Barbara D. Holmes, United States Magistrate Judge
*Printed name and title*

## STATEMENT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jordan R. Austin, being first duly sworn, do depose and state as follows:

<u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since April 2022. Prior to that time, I was an Investigative Specialist with the FBI from August 2019 through April 2022 assisting in investigations of counterintelligence, criminal, cyber, and terrorist threats. I am currently assigned to the FBI Nashville Field Office; Tullahoma Resident Agency and investigate federal crimes within the Eastern District of Tennessee, but I was previously assigned to the Nashville Violent Crime Gang Task Force and investigated federal crimes within the Middle District of Tennessee.

2.      As part of my daily duties, I investigate criminal violations relating to narcotics, firearms, crimes against children, financial crime, cyber-crime and other violations of federal law.

3.      Based on my training and experience and the facts set forth in this statement, there is probable cause to believe that **Gerardo Cardona-Gonzalez ("GONZALEZ")** has possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

4.      The facts contained in this statement are based on firsthand knowledge or information learned during this investigation from other law enforcement sources or witnesses related to this investigation. The statement does not provide each and every detail I know about this investigation, but rather provides information necessary to establish probable cause that **GONZALEZ** possessed a controlled substance with intent to distribute. Except where indicated, all the statements referred to below are set forth in substance and in part, rather than verbatim.

<u>PROBABLE CAUSE</u>

5.      On or about September 27, 2024, a Tennessee Highway Patrol (THP) Trooper stopped a black Chrysler 300 because the Chrysler was speeding on East Thompson Lane in Nashville, Tennessee. Specifically, the Chrysler was driving approximately 50 fifty miles per hour in a 40 mile-per-hour speed zone.

6.      The Trooper approached the Chrysler on the passenger side, introduced himself, identified two occupants in the Chrysler, and explained the reason for traffic stop. The Trooper asked the driver, later identified as **GONZALEZ**, for his license and registration. **GONZALEZ** told the Trooper that he did not have a license, but he provided the Trooper with the car's registration and a passport. **GONZALEZ** and the passenger were ultimately asked to step out of the car. While the passenger was showing his wallet to a law enforcement officer on the scene, the officer observed a small bag of a white powdery substance in the wallet. Officers arrested the passenger for possession of a controlled substance, in violation of state law.

7.      Officers conducted a subsequent search of the car and discovered seven plastic bags containing what appeared to be cocaine and methamphetamine. The plastic bags had additional baggies inside of them in half and whole grams, which I know from my training and experience as a common practice used by individuals who intend to sell the controlled substances. Officers took **GONZALEZ** into custody and transported him to the Metropolitan-Nashville Police Department South Precinct for an interview with Agents from the Homeland Security Investigations ("HSI") and the FBI.

8.      After his arrest, FBI and HSI interviewed **GONZALEZ** with the assistance of a Spanish HSI interpreter because **GONZALEZ** is not fluent in the English language. Prior to being interviewed, Agents read and provided **GONZALEZ** with English and Spanish versions of a

Department of Homeland Security Advice of Rights form. **GONZALEZ** signed the Spanish version of this form and consented to speak to Agents.

9.      **GONZALEZ** stated that the Chrysler belonged to him and that no one else had access to it. He added that there was only one key to the car, and this key was in his possession. **GONZALEZ** noted that he was giving the car's passenger a ride to work, and he only knew the passenger's nickname. **GONZALEZ** initially told Agents that the drugs found in the car were not his. However, as the interview progressed, **GONZALEZ** confessed and admitted these drugs belonged to him.

10.     **GONZALEZ** said he purchased larger quantities of drugs with cash, broke them into smaller sizes, and resold these drugs. He recalled selling the small baggies from $20 to $50 dollars depending on the weight and the specific drug. **GONZALEZ** told Agents the drugs were cocaine and "crystal." Through my training and experience, I know "crystal" is slang for methamphetamine. **GONZALEZ** also said he does not buy or sell fentanyl. **GONZALEZ** stated he paid somewhere between $1,000 and $1,500 dollars for the drugs that were found in his car.

11.     On or about November 22, 2024, the Drug Enforcement Administration ("DEA") drug laboratory analyzed the aforementioned drugs that were found in the GONZALEZ's Chrysler.  The DEA lab concluded the suspected cocaine was in fact cocaine with an approximate net weight of 47 grams. The DEA lab also found that the suspected methamphetamine was in fact methamphetamine with an approximate weight of 31 grams and 91 percent purity. Both cocaine and methamphetamine are Schedule II controlled substances.

12.     All of the events described above occurred in the Middle District of Tennessee.

<u>CONCLUSION</u>

13.     Based on the foregoing, there is probable cause to believe **GONZALEZ** possessed a controlled substance with the intent to distribute the substance, in violation of Title 21, United States Code, Section 841(a)(1).